The STATE of Ohio, Appellee,

v.

SUTHERLAND, Appellant.

[Cite as *State v. Sutherland* (1994), 92 Ohio App.3d 840.]

Court of Appeals of Ohio,
Auglaize County.

No. 2-93-10.

Decided Feb. 1, 1994.

*Mark E. Spees,* Auglaize County Prosecuting Attorney, and *Garrett T. Gall,* Assistant Prosecuting Attorney, for appellee.

*Gerald F. Siesel,* Auglaize County Public Defender, for appellant.

---

EVANS, Presiding Judge.

This is an appeal by the defendant-appellant, Danny Ray Sutherland, from a judgment of conviction in the Court of Common Pleas of Auglaize County entered pursuant to a jury verdict of guilty to a felony charge of trafficking in drugs, a violation of R.C. 2925.03(A)(6) and (E)(4).[1]

On Sunday, September 13, 1992, at approximately 10:30 a.m., Chris Allen Roberts was stopped by an Ohio State Highway Trooper for operating his vehicle, a 1987 Ford pickup, in an erratic manner. Appellant, a passenger in the truck, was observed by Trooper Stockman rising from a sleeping position and turning to look at the patrol car. As the truck pulled to the side of the highway, the trooper observed Roberts' making movements as if placing something under the seat with his right hand, and observed appellant's making similar movements toward the center of the seat.

After determining that Roberts' Michigan driver's license and registration were in order, the trooper asked both subjects to exit the truck so he could frisk them for weapons. Finding that neither was armed, he told them to stand ten to fifteen feet in front of the truck while he checked the truck's passenger compartment for weapons. In conducting the search of the truck's interior, the trooper discovered a "fuzz buster," which Roberts had placed under the seat, and a nearly transparent plastic box containing marihuana on the seat under a black nylon jacket.

After Trooper Stockman had placed the container of marihuana in his cruiser, he radioed for assistance from another officer. When Trooper Barrett, the "backup" officer, arrived, Chris Roberts and appellant were arrested and placed in Barrett's patrol car. Trooper Stockman later testified that he did not place the suspects in the back of his own cruiser, because his K–9 companion (*i.e.,* his "narcotics detection" dog) was in the back seat.

Based upon the evidence found on the seat of the truck, the officers next conducted a search of the entire truck for contraband. During this second search, conducted with the aid of the narcotics dog, the troopers found what

---

1. Subsection (E)(4) provides that where the offender has violated division (A)(6), trafficking in marihuana is a third-degree felony, but if he has "previously been convicted of a felony drug abuse offense, trafficking in marihuana is a felony of the second degree."

appeared to be freshly harvested marihuana under the hood of the truck and under the spare tire in the truck bed. Appellant and Roberts were both advised of their *Miranda* rights prior to the second search. Appellant has consistently denied knowledge of the marihuana that had been concealed on the truck, outside the passenger compartment.

Appellant was charged in the Auglaize County Municipal Court with trafficking in marihuana, in violation of R.C. 2925.03(A)(6) and (E)(4), a felony of the third degree, without specification. Due to continuances and delays in the holding of a preliminary hearing, appellant was indicted on the same charge by a grand jury, before a preliminary hearing could be held. On November 12, 1992, appellant and Chris Roberts, his co-defendant, filed motions to suppress evidence that they contended was improperly obtained in an illegal search. On November 19, 1992, the day after the motion hearing, the court issued its ruling, denying both motions to suppress. The case was then scheduled for trial on January 12, 1993.

Chris Roberts pled to the charge before trial. However, due to appellant's unwillingness to negotiate a plea, and based upon the state's discovery of appellant's prior felony drug conviction, the state dismissed the charges against appellant and indicted him on the more serious charge of trafficking in marihuana, with the added element of a prior felony drug conviction, which served to raise the level of appellant's offense to a second degree felony. See R.C. 2925.03(A)(6) and (E)(4).[2] Appellant again pled not guilty to the charge.

Prior to the May 5th jury trial, appellant agreed to stipulate to the authenticity of a photocopy of the decree of conviction to felony drug abuse in the state of Michigan. Also prior to the trial, the state filed a motion *in limine*, requesting the court to allow the introduction of "other acts" testimony under Evid.R. 404(B), which permits the introduction of such evidence only if it tends to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The state intended to introduce a detailed factual presentation of appellant's actions and behavior during the commission of his prior felony drug-related offense in Michigan.

The court ruled on the state's motion *in limine* immediately preceding the trial, finding such evidence admissible, in that it "does tend to show knowledge on the part of the defendant, * * * knowingly possess being one of the items that is going to be one of the elements of this particular case * * * [*sic* ]. Therefore the court is going to allow it for the limited purposes of tending to show motive, intent, plan, knowledge, absence of mistake, or accident."

---

**2.** See footnote 1, *supra.*

Thus, the court permitted the state to introduce extensive testimony from a Michigan deputy regarding the circumstances surrounding appellant's prior conviction on a felony drug abuse charge.

Following appellant's trial, the jury convicted him as charged, making the requisite "additional" finding that he had been previously convicted of a felony drug abuse offense. The court then sentenced appellant to a three-to-fifteen year term of imprisonment, suspended his driver's license for five years, and ordered him to pay a fine of $2,500 plus costs. Appellant's motions for probation, shock probation, and appellate bond were all denied. Appellant timely filed his notice of appeal from the court's May 7, 1993 entry of judgment and sentence, asserting three assignments of error.

## "ASSIGNMENT OF ERROR NO. ONE

"The trial court committed prejudicial error in overruling appellant's motion to suppress the fruits of illegal searches and seizures."

With his first assignment of error, appellant asserts that the court erroneously overruled his motion to suppress evidence, setting forth three contentions in support of the assignment. For the reasons which follow, we find appellant's contentions not well taken, and therefore overrule the first assignment of error.

## A

"The initial search of Roberts' truck, purportedly for the limited purpose of assuring the safety of Trooper Stockman, was not justified by specific, articulable facts under the totality of the circumstances."[3]

In *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, the United States Supreme Court declared that a police officer who has "reasonable suspicion" to justify a forcible stop of a defendant may search such defendant for weapons *if* there exist reasonable grounds to believe that the officer's safety is threatened. The Ohio Supreme Court has declared the *Terry* rule applicable to a limited search of the passenger compartment of an automobile legitimately stopped for a traffic violation, if the search is reasonable to ensure the officer's safety. *State v. Smith* (1978), 56 Ohio St.2d 405, 409, 10 O.O.3d 515, 517, 384

---

**3.** The second search, wherein the bulk amounts of marihuana were discovered under the hood of the truck and in the back of the truck, was not challenged as being unreasonable. See *Carroll v. United States* (1925), 267 U.S. 132, 45 S.Ct. 280, 67 L.Ed. 543, and its progeny; *United States v. Ross* (1982), 456 U.S. 798, 800, 102 S.Ct. 2157, 2160, 72 L.Ed.2d 572, 578 (police officers who have made legitimate automobile stop and who have probable cause to believe that contraband is in the vehicle may conduct as thorough a search of the vehicle as would be authorized by a magistrate issuing a warrant).

N.E.2d 280, 282. A reviewing court must consider the "totality of the circumstances" in determining whether the search was reasonable. *Id.*

██ As a reviewing court, we are to "give due weight to [the officer's] experience and training and view the evidence as it would be understood by those in law enforcement." *State v. Andrews* (1991), 57 Ohio St.3d 86, 88, 565 N.E.2d 1271, 1273, citing *United States v. Cortez* (1981), 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621. Following a review of the officer's testimony during the motion hearing, we conclude that his observations of the circumstances and conclusions drawn therefrom were reasonable. Trooper Stockman testified that during his extensive experience as a patrolman he had previously been threatened with weapons by suspects he had stopped, and that the "furtive" movements made by Roberts and appellant while they were being pulled over led him to fear that they might be in the process of concealing weapons. Moreover, as directed by the Supreme Court in *State v. Smith*, the officer's initial search was confined to the area toward which the suspects' furtive motions were directed. *Smith*, 56 Ohio St.2d at 409, 10 O.O.3d at 517, 384 N.E.2d at 282. Therefore, we find the officer's suspicion to be reasonable,[4] and his subsequent limited search of the area accessible to the suspects reasonable. See *id.* at 408, 10 O.O.3d at 516–517, 384 N.E.2d at 281–282. See, also, *State v. Evans* (1993), 67 Ohio St.3d 405, 413, 618 N.E.2d 162, 169–170.

### B

"Even if the initial search was justified as a protective weapons search, the discovery of a substance alleged to be marihuana in a closed container on the front seat went beyond the scope of a proper protective search."

██ In *Minnesota v. Dickerson* (1993), 508 U.S. ——, 113 S.Ct. 2130, 124 L.Ed.2d 334, the United States Supreme Court announced that, during a valid *Terry*[5] search for weapons, an officer who discovers evidence of a crime may seize such evidence. If the officer is lawfully conducting the search, and encounters an object whose "incriminating character is immediately apparent," he may seize the contraband without a warrant. *Id.*, 508 U.S. at —— – ——, 113

---

**4.** Although we agree with appellant's assertion that, as stated in *State v. Bobo* (1988), 37 Ohio St.3d 177, 179, 524 N.E.2d 489, 492, "a mere furtive gesture, standing alone, does not create probable cause to stop and search a vehicle without a warrant," the suspects in this case were not initially stopped for making furtive movements, but for erratic driving.

**5.** *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (officer who reasonably suspects an individual is engaged in illegal behavior may, without violating the Fourth Amendment, forcibly stop and question the individual, and may conduct a "frisk" of the suspect for weapons if officer reasonably fears for his or the public's safety).

S.Ct. at 2136–2137, 124 L.Ed.2d at 344–346. Thus, the court created a "plain feel" exception to the warrant requirement, analogous to the "plain view" exception to the warrant requirement of *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 465–471, 91 S.Ct. 2022, 2037–2041, 29 L.Ed.2d 564, 582. Since the *Terry* stop and search doctrine has previously been extended to automobile stops, we find it reasonable to apply "plain view" to a *Terry* search of an automobile. Thus, if an officer who is lawfully conducting a *Terry* search of the passenger compartment of a stopped vehicle discovers an object which is immediately seen to be contraband rather than a weapon, he may seize the object and make an arrest. See *Dickerson*, 508 U.S. at — – —, 113 S.Ct. at 2136–2137, 124 L.Ed.2d at 344–346 (Fourth Amendment requires that the officer have probable cause to believe that the item is contraband before seizing it, thus ensuring against "excessively speculative seizures"). Therefore, in this case, when Trooper Stockman discovered the nearly transparent container under appellant's jacket, and recognized immediately that the substance therein was marihuana, he reasonably and lawfully took possession of the container and arrested Roberts and appellant for possession of marihuana.

## C

"The state's contention that the appellant has no standing to contest the search of the truck amounts to an admission that the contraband was not his."

 The trial court determined that, since appellant's motion to suppress was found to be without merit, the state's claim that appellant lacked standing to contest the search of Chris Robert's car was moot. Having found that a valid search was conducted by the arresting officers in this case, we agree with the trial court's conclusion.[6] Thus, appellant's argument is not well taken. The first assignment of error is overruled.

## "ASSIGNMENT OF ERROR NO. TWO

"The trial court erred to the prejudice of appellant Sutherland in allowing evidence of his previous conviction and the details of the incident leading to that conviction to be presented to the jury."

---

**6.** Pursuant to the United States Supreme Court's holdings in *Rakas v. Illinois* (1978), 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387, and *United States v. Salvucci* (1980), 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619, a defendant must have both a possessory interest in the items seized in the search and also an expectation of privacy in the areas searched, in order to assert standing to challenge the search as unconstitutional. It is therefore not contradictory for the state to charge a defendant with a possessory offense and to maintain that such defendant has no standing to challenge the legality of the search. See Katz, Ohio Arrest, Search, and Seizure (3 Ed.1992) 284, Section 17.03.

■ The Ohio Supreme Court has held that, " '[a]s a general rule, the introduction of evidence tending to show that a defendant has committed another crime *wholly independent* of the offense for which he is on trial is prohibited.' " (Emphasis added.) *State v. Adams* (1978), 53 Ohio St.2d 223, 230, 7 O.O.3d 393, 397, 374 N.E.2d 137, 141. See, *e.g., State v. Strong* (1963), 119 Ohio App. 31, 26 O.O.2d 134, 196 N.E.2d 801 (details of like acts of defendant inadmissible where they have no relation to offense for which defendant is on trial); *State v. Lytle* (1976), 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; Evid.R. 404(A). With regard to admission of evidence of "other acts of wrongdoing," the Supreme Court has further commented that,

"Because R.C. 2945.59 and Evid.R. 404(B) codify an exception to the common law with respect to evidence of other acts of wrongdoing, they must be construed against admissibility, and the standard for determining admissibility of such evidence is strict." *State v. Broom* (1988), 40 Ohio St.3d 277, 281–282, 533 N.E.2d 682, 690.

As we noted above, despite appellant's open court admission that he had been previously convicted of a drug-related felony, the trial court herein permitted the state to introduce substantial evidence of the circumstances and facts involved in the commission of that crime. The court determined that the evidence was admissible under R.C. 2945.59 and Evid.R. 404(B).[7] The element specifically noted by the trial court as being provable by the deputy's testimony was "knowledge."

We conclude that the introduction of the details surrounding the commission of the Michigan offense was highly prejudicial to appellant, and may have unduly influenced the jury to convict appellant of the present possession offense based upon his past, unrelated behavior. Such influence is precisely the reason that the evidence of prior wrongdoing is inadmissible, even if relevant. As noted in Weissenberger's Ohio Evidence, Section 404.22, "extrinsic act evidence is excluded not because it has no appreciable probative value, but *because it has too much.*" The rule permits admission of such evidence, if relevant, but only if the prior acts tend to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The evidence admitted is not probative of any of these elements. Therefore, although the state was permitted, indeed required, to produce evidence of appellant's prior conviction in order to prove one element of the crime with which he was charged, permitting the Michigan deputy to elaborate on the intricate details served only to unfairly

---

7. The statute and rule are essentially identical, permitting admission of relevant, prejudicial "other acts" evidence, not for proving the defendant's propensity for criminal behavior, but *only* if probative "of motive opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B).

prejudice the jury against appellant, suggesting the inference that appellant had a propensity to commit the crime with which he was charged.

■ The "knowledge" required to be proven by the state in this case is appellant's knowledge of the presence of the marihuana concealed on the driver's truck. Simple knowledge of the existence of the marihuana on appellant's part would lead to the presumption that he knowingly possessed the drug. However, appellant's past behavior, occurring nearly one year prior to the incident for which he was arrested herein, *has no relevance* to whether he knew there was marihuana hidden under the hood of the vehicle on the specific occasion at issue in the present case.

Further, after reviewing the record herein, and the testimony of the witness in its entirety, we note that the behavior which led to appellant's conviction in Michigan, *i.e.*, distributing marihuana he had purchased for personal use to his friends, while seated *in his own vehicle*, is not probative of the commission of the particular crime with which appellant was charged herein. In the present case, appellant, simply by virtue of his being a passenger in Chris Roberts' truck, was charged with knowingly possessing freshly harvested marihuana which Roberts had admittedly concealed under the hood of his own truck. Nor were the circumstances of the prior offense inextricably intertwined with the crime charged, such that those details would tend to show plan, scheme, motive, or absence of accident.[8] See *State v. Hutton* (1990), 53 Ohio St.3d 36, 40, 559 N.E.2d 432, 438–439. It would have been permissible, and sufficient to establish the necessary element of previous conviction of a felony drug offense, see R.C. 2925.03(E)(4), to prove only that the conviction occurred, and that this defendant is the same person convicted in that case:[9]

---

**8.** Contrary to the assertion of the dissent herein, the fact that appellant committed a drug-related crime in the past surely does not "show that the former crime and the current crime were committed by the same person"! Besides, nowhere in the record is it found that appellant's identity was in question. See *Hutton*, 53 Ohio St.3d at 40, 559 N.E.2d at 438–439. Furthermore, the only way these crimes could have possibly been "inextricably intertwined" would be if the state had claimed that the actual marihuana concealed on Roberts' truck was the *same* marihuana which appellant was previously convicted of possessing, or, perhaps, if Chris Roberts or his truck had been involved in the previously committed crime. See *id.*

**9.** The Michigan statute under which appellant was convicted states, in pertinent part:
 "[A] person shall not manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance. * * * A person who violates this section as to * * * marihuana, *is guilty of a felony."* (Emphasis added.) Mich.Comp.Laws Ann. 333.7401(1) and (2)(c).
 The fact that the state already had on record appellant's admission to that element of the crime (*i.e.*, prior conviction of a drug-related felony) is simply further evidence that the state introduced the testimony simply to inflame the jury. Thus, the evidence was cumulative, besides being irrelevant for the purposes it was allowed.

Considering there was no evidence on the record to support the state's charge that appellant "knowingly possessed" the bulk amounts of marihuana in question aside from the inconsistent testimony of Chris Roberts, the codefendant, we are not convinced that the court's admission of all the deputy's testimony was harmless error, or that "the other admissible evidence, standing alone, constitutes overwhelming proof of guilt." *Hutton,* 53 Ohio St.3d at 41, 559 N.E.2d at 439, citing *State v. Williams* (1983), 6 Ohio St.3d 281, 6 OBR 345, 452 N.E.2d 1323, paragraph six of the syllabus. We cannot say with certainty that appellant would have been found guilty beyond a reasonable doubt, based *solely* on the testimony of an unreliable witness. Thus, we conclude that the court erred in granting the state's motion *in limine,* especially in light of the fact that appellant had admitted his prior felony conviction on the record, and a few brief statements by the Michigan deputy would have sufficed to establish the relevant element. We therefore sustain appellant's second assignment of error.

### "ASSIGNMENT OF ERROR NO. THREE

"The evidence is insufficient to sustain a verdict against appellant."

In light of our decision to sustain the second assignment of error, and pursuant to App.R. 12(A)(1)(c), we find the third assignment of error moot.

Having found error prejudicial to the appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court, and remand the case to that court for further proceedings.

*Judgment reversed*
*and cause remanded.*

HADLEY, J., concurs.

SHAW, J., dissents.

SHAW, Judge, dissenting.

Upon careful review of the record in this case and of the applicable law, I conclude that the trial court did not err in admitting the Michigan deputy's testimony about the circumstances of defendant's prior drug offense. Moreover, even assuming that the evidence was improperly admitted, such error must be viewed as harmless in this case, in light of the other evidence contained in the record. Thus, as it is my opinion that defendant's second assignment of error should be overruled, I respectfully dissent.

Evid.R. 404(B) provides:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It

may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

R.C. 2945.59 provides:

"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

As the majority correctly notes, Evid.R. 404(B) and R.C. 2945.59 are to be strictly construed against admissibility. See, *e.g.*, *State v. Broom* (1988), 40 Ohio St.3d 277, 533 N.E.2d 682. Yet while the standard for admissibility is strict, the Supreme Court has specifically held that both the rule and the statute permit the admission of other acts evidence where those acts "tend to show" any of the items enumerated in the rule or statute. *State v. Hill* (1992), 64 Ohio St.3d 313, 322–323, 595 N.E.2d 884, 892–893, citing *State v. Flonnory* (1972), 31 Ohio St.2d 124, 60 O.O.2d 95, 285 N.E.2d 726; *State v. Jamison* (1990), 49 Ohio St.3d 182, 552 N.E.2d 180. In the case *sub judice,* I believe that the other acts evidence was properly admitted at trial because the evidence tended to show that defendant had knowledge of the marihuana concealed under the hood and in the bed of the pickup truck in the instant offense.

The evidence at issue is the testimony of Travis Dick, a sheriff's deputy from Oakland County, Michigan. Deputy Dick testified that, on October 3, 1991, defendant had been arrested in Michigan. The arrest stemmed from Deputy Dick's discovering defendant and a second man sitting in defendant's vehicle in a convenience store parking lot. As Deputy Dick had pulled into parking lot on routine patrol, he noticed furtive movements by defendant and the second man in the vehicle. Upon questioning the men, Deputy Dick noticed a partially concealed plastic bag to the side of defendant's driver's seat. Defendant produced the bag upon request and it contained two separately rolled bags of marihuana, one ounce each. Upon searching defendant's car, two more one-ounce plastic rolls of marihuana were found under the passenger seat. An additional two and a half ounces of loose marihuana were found in a large plastic bag hidden inside a cooler in defendant's back seat. Defendant was charged with possession of marihuana with intent to deliver, to which he pled guilty and was then convicted.

The current offense is also a drug offense involving marihuana. More to the point, the instant offense also involves the concealment of multiple packages of

marihuana in various locations about the subject vehicle, and involves a quantity of marihuana far larger than that which could be considered an amount possessed solely for personal use. Finally, the current offense took place less than one year after the previous offense.

As such, the disputed evidence established that defendant had committed a very similar crime within the recent past, and that the execution of the similar crime involved several characteristics common to the instant offense. Thus, the disputed evidence tends to show that the former crime and the current crime were committed by the same person and, therefore, the evidence is probative of defendant's knowing possession of the marihuana in the instant case.

Accordingly, I conclude that the other acts evidence was properly admitted in this case, not to demonstrate some sort of poor character on defendant's part in order to show that he acted in conformity therewith but, rather, to show that defendant did knowingly take part in the packaging, concealing and transporting of the marihuana at issue here.

Moreover, even if evidence is erroneously admitted under Evid.R. 404(B) and R.C. 2945.59, it is well established that such error may be considered harmless. See, *e.g.*, *State v. Hutton* (1990), 53 Ohio St.3d 36, 559 N.E.2d 432; *State v. Lytle* (1976), 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623, vacated in part on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154. "Error in the admission of other act testimony is harmless when there is no reasonable possibility that the testimony contributed to the accused's conviction." *State v. Lytle, supra*, 48 Ohio St.2d at 391, 2 O.O.3d at 495, 358 N.E.2d at 624, paragraph three of the syllabus, vacated in part of other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154. In other words, such error is harmless if the other admissible evidence, standing alone, constitutes overwhelming proof of defendant's guilt. *State v. Williams* (1983), 6 Ohio St.3d 281, 6 OBR 345, 452 N.E.2d 1323. Finally, Crim.R. 52(A) provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights *shall* be disregarded." (Emphasis added.) Thus, it is mandatory that we apply the harmless error doctrine, if appropriate.

In this case, defendant was charged with a violation of R.C. 2925.03(A)(6), which prohibits the knowing possession of a controlled substance in an amount equal to or exceeding three times the bulk amount, but in an amount less than one hundred times that amount.[10]

Absent the disputed other acts testimony, the record contains ample other evidence which, if believed by the jury, unequivocally established that defendant

---

10. The "bulk amount" is an amount equal to or exceeding two hundred grams. See R.C. 2925.01(E)(3).

knowingly possessed six hundred grams or more of marihuana. In particular, Chris Roberts, the co-defendant in the case, testified extensively at trial about defendant Sutherland's direct participation in harvesting the marijuana in question, packaging it, and then concealing it in the truck in the places where it was eventually discovered by the State Highway Patrol in Auglaize County.[11]

Also supporting the conclusion that any error was harmless is the fact that the trial judge gave a limiting instruction at the time of the other acts testimony. The court instructed the jury as follows:

"Evidence of other acts by the Defendant, if true, have a limited purpose. You may consider the Defendant's other acts, if and when those other acts tend to show his intent, motive, absence of mistake or accident, or knowledge concerning the act charged in this trial. Such evidence of other acts must not be considered for any other purpose. evidence of other crimes, wrongs, or acts by the Defendant, if true, is not admissible to prove the character of the Defendant in order to show that he acted in conformity therewith."

The trial court also reiterated the same instruction at the end of the trial, as part of the general charge to the jury.

Thus, assuming *arguendo* that the other acts evidence was erroneously admitted, there is other evidence in the record which, if believed by the jury, constituted overwhelming proof of defendant's guilt. Accordingly, any error in the admission of the other acts testimony must be viewed as harmless.

In summary, it is my conclusion that, for the reasons given, defendant's second assignment of error should be overruled.

---

11. The majority has chosen to completely disregard this direct evidence of defendant's guilt, having apparently decided that co-defendant Roberts was not credible. However, the credibility of witnesses is for the trier of fact to determine, and is not a matter properly considered by an appellate court upon review of the case. See, *e.g., State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212.