OPINION
This matter presents a timely appeal from a decision rendered by the Jefferson County Common Pleas Court, entering judgment upon a jury verdict finding defendant-appellant, John Temple, guilty of murder, in violation of R.C. 2903.02; of having a weapon while under disability, in violation of R.C. 2923.13 (A) (2); and, of illegally possessing a firearm in a liquor permit premises, in violation of R.C. 2923.121.
Appellant averred that on December 24, 1996, he arrived with his wife at the American Legion Hall, located in Steubenville, Ohio. Shortly thereafter, Jerry Jeter, the victim, entered the American Legion Hall and appellant wished him happy holidays. (Tr. 175). The victim and appellant had an acrimonious relationship. Appellant claimed that every time he saw the victim at a grocery store or at the American Legion Hall, the victim would harass him. (Tr. 173). At trial, appellant testified that the victim continuously reminded him that he had killed another person in the past and would do it again. (Tr. 174). Appellant alleged that after he wished the victim happy holidays, the victim began to antagonize him by pushing him, and threatening him. (Tr. 175-176). Appellant claimed that the victim continued to shout threats at him, and then walked out of the American Legion Hall. (Tr. 178-179). Appellant maintained that he also left the American Legion Hall because he needed to go home and get some money. (Tr. 179)
When appellant returned to the American Legion Hall, he saw the victim once again. Appellant claimed that the victim began cursing and pointing his finger at him. (Tr. 180) Appellant maintained that he fired his gun at the victim because the victim made a gesture with his hands. Appellant contended that he acted in self defense because he believed the victim was reaching behind his back to retrieve a gun. Appellant claimed that he did not know he had hit the victim when he fired the first shot, so he fired two additional shots. (Tr. 181). Appellant also testified that when he fired the gun at the victim he was not wearing his eyeglasses. After appellant killed the victim, he then asked for someone to take his gun and call the police. Appellant walked to his home where he was apprehended by police officers from the Steubenville Police Department. (Tr. 181)
The jury had the opportunity to hear the testimony of several eyewitnesses who viewed what transpired on the night in question. The testimony offered by such witnesses was consistent. Several of the eyewitnesses testified that they did not see the victim with a gun on the night that he was killed.
Ms. Thorn, a barmaid at the American Legion Hall, testified that the victim was sitting in a booth located on a riser/platform directly across the bar minding his own business. (Tr. 74). Ms. Thorn also testified that she had the opportunity to observe the entire incident on the night in question. Ms. Thorn stated that she saw appellant as he stood with a loaded gun in his hand, and heard him tell the victim to stop messing with him. (Tr. 66-67). The victim responded that he was not messing with him. Appellant again repeated, "I told you, leave me alone, stop messing with me." (Tr. 67). Ms. Thorn offered that she observed the victim stand up, pull his sweater up and tell appellant that he did not have anything on him. (Tr. 67). Ms. Thorn further offered that she did not see the victim with a gun. (Tr. 67).
Mr. Elder, another eyewitness, testified that the victim was running away from appellant towards the back of the bar when appellant fired his first shot. (Tr. 79-80). After appellant fired the first shot, he walked over where the victim was lying and fired two more shots at a distance of approximately two feet from the victim's head. (Tr. 81-82). The victim ultimately died as a result of the gunshot wound to his head. (Tr. 148).
Appellant was indicted on January 9, 1997, by the Jefferson County Grand Jury, on three counts, including: one count of aggravated murder, in violation of R.C. 2903.01, along with an attendant firearm specification; one count of illegal possession of a firearm in a liquor permit premises, in violation of R.C.2923.121, along with an attendant firearm specification; and, one count of having a weapon while under disability, in violation of R.C. 2923.13 (A) (2).
On January 17, 1997, appellant was arraigned before the trial court and entered a plea of not guilty. This matter proceeded to a jury trial on March 18, 1997. Upon due consideration of the testimony and evidence offered at trial, the jury found appellant guilty of murder, of illegally possessing a firearm in a liquor permit premises and of having a weapon while under disability. Appellant was sentenced to an indefinite incarceration term of not less than fifteen years nor more than life for murder; an actual and definite incarceration term of three years for the firearm specification, to be served consecutively and prior to the underlying felony of murder; a definite incarceration term of ten months for illegal possession of a firearm in a liquor permit premises, to run concurrently to the sentence for murder; and, a definite incarceration term of ten months for having a weapon while under disability, to be served concurrently to the sentences imposed for murder and having a firearm in a liquor permit premises.
Appellant sets forth two assignment of error on appeal.
Appellant's first assignment of error alleges:
 "THE TRIAL COURT ERRED BY REFUSING TO CHARGE THE JURY ON THE LESSER INCLUDED OFFENSE OF VOLUNTARY MANSLAUGHTER IN VIOLATION OF REVISED CODE 2903.03."
Although appellant argues voluntary manslaughtger as a lesser included offense to murder, it is more appropriately identified as an offense of an inferior degree. State v. Tyler (1990),50 Ohio St.3d 24, 36. However, this court will for purposes of this opinion, continue to refer to voluntary manslaughter as a lesser included offense as same was characterized by appellant.
It is clear to this court that appellant failed to object to the trial courts proposed jury instructions. In State v. Campbell
(1994), 69 Ohio St.3d 38, the Ohio Supreme Court held that an appellate court need not consider any error which counsel for a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. Thus, in the absence of an objection before the trial court, this court will only consider whether the error in question constituted plain error. Campbell, supra. In State v.Cooey (1989), 46 Ohio St.3d 20, 31 the Ohio Supreme Court stated that an error "does not constitute plain error or defect under Crim.R. 52 (B) unless, but for the error, the outcome of the trial clearly would have been otherwise. Crim.R. 52 is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.
In State v. Long (1978), 53 Ohio St.2d 91, 96, the Ohio Supreme Court stated that the failure to object to a jury instruction is violative of R.C. 2901.05 (A) and constitutes a waiver of any claimed error. Long further emphasized that a jury instruction violative of R.C. 2901.05 (A) does not constitute a plain error or defect under Crim.R. 52 (B) unless, but for the error, the outcome of the trial clearly would have been otherwise.
Appellant contends that he requested jury instructions on the lesser-included offense of voluntary manslaughter along with the instructions on aggravated murder and murder. Appellant cites to a litany of cases in support of his proposition that a defendant is entitled to an instruction on a lesser-included offense if such instruction is warranted. Appellant cites to and relies uponState v. Tyler (1990), 50 Ohio St.3d 24, 36, wherein the Ohio Supreme Court held that "a defendant is entitled to an instruction to an inferior degree of the indicted offense when the evidence is such that a jury could both reasonably acquit him of the indicted offense and convict him of the inferior offense." (Citation omitted)
Appellant maintains that the lesser-included offense of voluntary manslaughter was warranted since he alleged that he was constantly being menaced, intimidated, tormented and harassed by the victim. Appellant mistakenly avers that there was sufficient testimony presented to the trial court to substantiate the fact that he was harassed by the victim. Appellant also cites to Statev. Muscatello (1977), 57 Ohio App.2d 231, for the proposition that in a prosecution for murder, the defendant need only produce some evidence of severe emotional stress in order to warrant a jury insruction on voluntary manslaughter. Appellant's reliance on Muscatello is misguided. The court in Muscatello specifically held in its syllabus, that emotional stress is not an element of the offense of voluntary manslaughter pursuant to R.C. 2903.03. However, emotional stress is a mitigating circumstance for which a defendant in a criminal prosecution bears the burden of producing some evidence.
Appellant's contention that he requested the trial court issue jury instructions on the lesser-included offense of voluntary manslaughter is erroneous. Based upon a thorough review of the transcript of proceedings, it is clear that during the proposed jury instructions, appellant did not request the lesser-included offense of voluntary manslaughter. Furthermore, appellant did not object to the trial court's decision not to instruct on the charge of voluntary manslaughter. The record in the instant case does not meet the foregoing criteria and does not contain a plain error or defect within the meaning of Crim.R. 52 (B)
R.C. 2903.03 defines voluntary manslaughter as follows:
 "(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another."
In State v. Shane (1992), 63 Ohio St.3d 630, 634 the Ohio Supreme Court set forth four obstacles which a defendant must overcome before he can have an intentional killing reduced from murder to voluntary manslaughter: (1) there must have been a reasonable provocation; (2) the defendant must have been in fact provoked; (3) a reasonable man so provoked would not have cooled off in the interval of time between the provocation and the delivery of the fatal blow; and, (4) the defendant must not in fact have cooled off during that interval.
In Shane, supra at 632, the Ohio Supreme Court acknowledged that trial courts often misfocus their analysis of a voluntary manslaughter instruction and stated:
 "Past decisions of the this court have sometimes given the erroneous impression that, whenever there is "some evidence' that a defendant in a murder prosecution may have acted in such a way as to satisfy the requirements of the voluntary manslaughter statute, an instruction on the inferior-degree offense of voluntary manslaughter must always be given. That clearly never has been the law in this state, nor is it the law today. The some evidence' referred to in those cases is simply an abbreviated way of saying that a jury instruction must be given on a lesser-included offense (or inferior-degree) when sufficient evidence is presented which would allow a jury to reasonably reject the greater offense and find the defendant guilty on a lesser-included (or inferior degree) offense.
The Ohio Supreme Court in Shane, supra at 633 further elaborated on said issue and held as follows:
 "To require an instruction be given to a jury every time `some evidence,' however minute, is presented going to a lesser-included offense (or inferior-degree) would mean that no trial judge could ever refuse to give an instruction on a lesser-included (or inferior-degree) offense. Trial judges are frequently required to decide what lesser included (or inferior-degree) offenses must go to the jury and which must not. The jury would be unduly confused if it had to consider the option of guilty on a lesser-included (or inferior-degree) offense when it could not reasonably return such a verdict."
The Ohio Supreme Court in Tyler, supra at 36, citing to Statev. Thomas (1988), 40 Ohio St.3d 213, 215, made it clear that "even though an offense may be statutorily defined as a lesser-included offense of another, a charge on the lesser offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser-included offense.
Appellant suggests that because the victim harassed him over a period of years, such harassment developed into and constituted "sufficient provocation" which would then require a voluntary manslaughter jury instruction. Assuming arguendo that the victim consistently harassed appellant on the night in question, appellant had more than sufficient time to cool down after he left the American Legion Hall the first time to go home and get money. Appellant returned to the American Legion Hall with a loaded weapon and approached the victim with a weapon in his hand as the victim attempted to flee. It is evident that appellant had sufficient and additional time to cool off from the period of time in which he fired the gun the first time, and the period of time that he fired the second and third time. Witnesses testified that appellant was very calm as he walked across the hall looking for the victim in order to fire the gun two more times.
It is clear that R.C. 2903.03 provides that the sudden passion or sudden fit of rage must be "brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force * * *." Shane, supra at 634. If insufficient evidence of provocation is presented, so that no reasonable jury would decide that an actor was reasonably provoked by the victim, the trial judge must, as a matter of law, refuse to give a voluntary manslaughter instruction. Shane, supra
at 634.
The facts in this case do not present sufficient evidence to warrant a jury instruction on the lesser-included offense of voluntary manslaughter.
Appellant's first assignment of error is found to be without merit.
Appellant's second assignment of error alleges:
 "THE TRIAL COUNSEL'S FAILURE TO OBJECT OR ATTEMPT TO SUPPRESS THE INTRODUCTION OF A NINETEEN-YEAR OLD CONVICTION WAS INEFFECTIVE ASSISTANCE OF COUNSEL."
The benchmark for judging a claim of ineffective assistance of counsel is whether defense counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result.Strickland v. Washington. (1984), 466 U.S. 668. To prevail on an ineffective assistance of counsel claim, an appellant must show that defense counsel's representation fell below an objective standard of reasonableness, and that there was a reasonable probability that, but for defense counsel's unprofessional errors, the result of the proceeding would have been different, when considering the totality of the evidence that was before the trial court. Strickland, supra.
Furthermore, there is a presumption of effective assistance of counsel. State v. Bradley (1989), 42 Ohio St.3d 136. A reviewing court cannot use the benefit of hindsight in determining whether a defendant received effective assistance of counsel. Strickland, supra.
Appellant argues that defense counsel was ineffective because he did not object to, or attempt to suppress, appellee's introduction of a certified copy of appellant's 1978 aggravated assault conviction. Appellant suggests that his character was improperly attacked when appellee introduced his prior conviction during its case-in-chief. Appellant claims that he did not open the door" in order for appellee to introduce said prior conviction. Appellant maintains that even though appellee introduced said prior conviction for purposes of establishing an element of the charge for carrying a weapon while under disability, such introduction nonetheless indirectly attacked his character.
Appellant cites to State v. Sutherland (1994), 92 Ohio App.3d 840
for the proposition that prior convictions and details of an incident leading to a conviction should not be admitted into evidence. Appellant's reliance upon Sutherland is misplaced. The court in Sutherland addressed the use of a prior conviction dealing with crimes which were completely independent of the offense for which the defendant was being tried. In the instant case, appellant's prior conviction was an essential element of the current crime charged.
Appellant further argues that defense counsel was ineffective for failing to file a motion in limine or a motion to suppress the evidence on his prior conviction. Appellant suggests that said motions would have eliminated the charge for carrying a weapon while under disability. Appellant also claims defense counsel erred by failing to request that limiting instructions be issued to the jury regarding how the evidence of his prior conviction should have been considered. Appellant avers that no such limiting instructions were requested, and the jury was not admonished that his prior conviction should only be considered for the purposes of determining appellant's guilt as to the charge for carrying a weapon while under disability.
We cannot find that defense counsel was ineffective in accordance with Strickland, supra. Appellant has failed to show this court that there was a reasonable probability that but for defense counsel's actions, the result of the case would have been different and therefore, appellant has not proven ineffective assistance of counsel. Further, given the fact that appellant was charged with carrying a weapon while under disability, there was no basis for an objection to the introduction of his prior conviction, and therefore, no basis for a claim of ineffective assistance of counsel.
R.C. 2923.13 (A) and (C) speak of having a weapon while under disability and provide, in pertinent part:
 "(A) Unless relieved from disability as provided in Section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
" * * *
 "(2) The person is under indictment for or has been convicted of any felony of violence, * * *
 "(C) Whoever violates this section is guilty of having weapons while under disability. * * *"
The central issue in the instant case is whether or not defense counsel should have filed a motion to suppress or a motion in limine in order to prevent the introduction of appellant's prior conviction. Even if said motions were filed, the trial court would have been required to deny same since the existence of appellant's prior conviction was an essential element of the current charge for carrying a weapon while under disability.
In State v. Smith (1990), 68 Ohio App.3d 692, the court held in its syllabus that the State must provide sufficient proof necessary to convince the trier-of-fact beyond reasonable doubt as to the existence of every element of the offense charged. The court in Smith further held that when a previous conviction is an element of an offense, the State must prove the prior conviction beyond a reasonable doubt and, neither the State nor the trial court is required to accept the defendant's stipulation as to the existence of the conviction. The court specifically noted that where a prior conviction is an essential element of the current crime charged, not only is the proffering of such conviction proper, it is required. Smith, supra 696.
The court in State v. Day (1994), 99 Ohio App.3d 514, 517, likewise stated that where the existence of a prior offense is an element of a subsequent crime, the State must prove the prior conviction beyond a reasonable doubt, just as it must prove any other element. The jury must be able to find that the previous conviction has been established, in order to find the defendant guilty on the second offense. (Citation omitted). In Day, the court held that a prior domestic violence conviction was admissible and allowed such conviction to be presented to the jury as it was an element of the defendant's second offense of domestic violence. Day, supra at 505.
Based upon the fact that appellant's prior conviction was an essential element of the current crime for which he was charged, in accordance with Smith, supra at 696, it was not only proper for the trial court to allow said conviction to be admitted, it was required.
Appellant's second assignment of error is found to be without merit.
The judgment of the trial court is affirmed.
Vukovich, J., concurs.
Waite, J., concurs.
 APPROVED: ______________________________ EDWARD A. COX, PRESIDING JUDGE